736 P.2d 1355

**In the Interest of Bonnie Kathleen BROWN, John Oliver Brown, Children under 18 years of age.**

**Kathleen BROWN, Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 16661.**

Court of Appeals of Idaho.

April 16, 1987.

---

Dennis S. Voorhees, Twin Falls, for appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., James Thomas Baird, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

This case involves the termination of a mother's parental rights to her two children. Finding that the mother had abandoned, neglected, and abused the children, a magistrate ordered her rights terminated. The termination order was upheld on appeal to the district court. The mother seeks further review of the proceeding. She raises two issues: (1) whether the evidence supported the magistrate's termination order, and (2) whether the state was required to provide psychotherapy for the mother before pursuing termination of her parental rights. We affirm.

Don and Kathleen Brown had two children. In December, 1985, the state Department of Health and Welfare petitioned the court to terminate the Browns' parental rights. Following a hearing, a magistrate determined that the children had been abused, neglected, and abandoned and ordered the mother's parental rights terminated. However, the father had died subsequent to the filing of the petition for termination. The magistrate, therefore, did not order termination of the father's rights, allowing the children to apply for certain survivor benefits. Accordingly, we are concerned on this appeal only with the termination of the mother's parental rights.

Idaho Code § 16-2005 provides for termination of parental rights in any of five situations: (a) abandonment, (b) neglect or abuse, (c) lack of a biological relationship between the child and a presumptive parent, (d) mental incapacity of the parent, or (e) where termination is in the best interest of the parent and child. Each statutory category provides a sufficient ground to terminate parental rights where termination would serve the best interests of the child. *Hofmeister v. Bauer*, 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986). A standard of clear and convincing evidence must be applied by the trial court in determining whether grounds for termination have been established. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). *See also* I.C. § 16-2009 (as amended in 1983). On review of the trial

court's findings, this Court applies a standard of substantial evidence. *Hofmeister v. Bauer, supra; In re Interest of Cheatwood,* 108 Idaho 218, 697 P.2d 1232 (Ct. App.1985). We will not disturb a trial court's finding that is supported in the record by substantial evidence.

██ Turning to the evidence in this case, we review first the magistrate's finding that the mother had abused the children. Testimony was presented that the mother had abused one of the children by hitting the child with a hose, causing bruises, and by forcing the child to kneel on a broomstick in the corner of a room. A report to the court from the Department of Health and Welfare indicated that men who had lived with the mother also had abused the children both physically and sexually. For instance, one of the men was reported to have pointed guns at the children. The mother, who was slightly mentally retarded, was unable to protect her children from these men. The record clearly supports the magistrate's finding that the children's home was unsafe because of the men who were living with the mother. On appeal, the mother asserts that the evidence of abuse was insubstantial in nature, involved conduct that was capable of being remedied and which occurred prior to the intervention of the Department. We disagree. The record supports the magistrate's finding that the children were abused, and that their mother had a part in abusing the children.

We next review the magistrate's finding that the mother had neglected the children. Prior to filing the petition for termination, the Department had placed the children in foster homes. In order to provide for the children's care and to help assure the reuniting of the mother with her children, the Department had made a contract with the mother. Under the contract the mother was required to fulfill certain obligations. The magistrate found that she had failed to make reasonable efforts to fulfill that contract. For instance, she was required to make regular child support payments of $15 per month per child. However, the evidence shows that from 1984 to 1986 the mother paid only $30. The magistrate also found that the mother failed over a period of time to maintain regular personal contacts with the children. Twice the mother left the state for extensive periods of time without first informing the Department of her destination or whereabouts. The record also indicates that the mother failed to provide for the children's clothing, necessities, and education. The mother did not have a job, and did not have a home sufficient to care for the children. The testimony of one of the foster parents established that one child was educationally underdeveloped at the time she was removed from her mother's home. However, after being in the foster home, the child progressed to a normal level of achievement. The evidence also showed that both children, when removed from the mother's custody, were exhibiting undesirable sexual and social behavior. Under foster care, the children were correcting these problems.

██ On appeal, the mother argues that it was unreasonable to require her to make child support payments when she was living on government subsistence payments and barely able to survive on her own. Testimony of the Department caseworkers indicated that the $30 per month support was a minimal amount that could be paid from the mother's budget. The caseworkers attempted to assist the mother with her budgetary problems, but she did not follow their advice. The mother testified that at the end of the month she sometimes had money, but she failed to explain why she did not make the support payments. We are not persuaded that either the requirement or the amount was unreasonable. The mother also argues that it was unfair to penalize her for having failed to plan nutritious meals and attend to personal hygiene of her children prior to the intervention of the Department. We disagree. Evidence of the mother's past is directly relevant to her ability to presently provide for the children. *See Dayley v. State,* 112 Idaho 522, 733 P.2d 743 (1987).

██ The magistrate also found that the mother had abandoned the children. This

was evidenced by her failure, over a period in excess of one year, to provide regular support, to regularly visit with the children, and by her failure to provide clothing, necessities, and medical and educational expenses. The mother argues on appeal that this failure to provide clothing, medical and educational expenses was the product of her subsistence income and the Department's custody over the children. However, the record is clear that she had only minimal payments to make, yet failed to do so. The record also shows that she did not regularly visit the children. She left the state twice, once for a six-month period, and once for a two-month period, leaving no forwarding address. Caseworkers attempted to help her learn basic homemaking, budgeting, and hygienic skills. However, her unexplained absences precluded her from making any progress in these endeavors. We hold that substantial evidence supports the magistrate's finding that the mother had abandoned the children.

The mother also asserts on appeal that her parental rights could not be terminated because the state failed to provide psychotherapy. She contends that such treatment was necessary to help her overcome her dependence on domineering and abusive men. She points to provisions of the Child Protective Act (title 16, ch. 16, Idaho Code) for authority that the state is obligated to (1) preserve the privacy and unity of the family whenever possible; (2) take such actions as may be necessary and feasible to prevent the abuse, neglect or abandonment of children. She also cites federal law requiring the state to make "reasonable efforts" to prevent or eliminate the need for removal of a child from its home or, after removal, to make it possible for the child to return to its home. 42 U.S.C. § 671(a)(15). We are not persuaded that these references are relevant to the inquiry before us. This is not a proceeding under the Child Protective Act. It is a termination process under title 16, chapter 20 of the Idaho Code. The relevant legislative statement of policy on this subject is contained in I.C. § 16–2001: "[W]herever possible family life should be strengthened

and preserved...." The mother's reliance on the federal statute is likewise misplaced. That law is part of the federal statutory scheme to provide financial assistance to foster care programs—programs conducted under the Child Protective Act. We therefore deem neither of these referenced sources to be controlling in the instant case.

We find no requirement in title 16, chapter 20 that explicitly mandates psychotherapy for a parent before the state seeks termination of parental rights. Such a course of action would be within the legislative prerogative in establishing the process and conditions for terminating parental rights. The Legislature has chosen not to impose such a condition, and we decline to do so under the guise of judicial fiat.

Nevertheless, we may consider whether psychotherapy would have been a reasonable option for the state to pursue in this case, before petitioning for termination of the mother's rights. No evidence was presented showing that such treatment was available or that—if available—it would have been productive. Other efforts by the Department to assist the mother were unavailing. The Department tried to arrange and facilitate visits between the mother and the children while the children were under foster care. The state also helped the mother obtain community resources and counseled her about her relationships with the men with whom she was living at different times. Additionally, the state worked with her on budgeting, home maintenance, and the requirements necessary to protect her children. However, the record is clear that the mother did not take advantage of the training and opportunities offered to her. These efforts by the Department were frustrated by the mother's own lack of cooperation. We conclude that any course of psychotherapeutic treatment would have been unproductive in light of the mother's disregard of the other efforts of assistance by the state.

In summary, the record clearly establishes that the children were abused, neglected, and abandoned. Also, because of the

mother's inability or lack of desire, there appeared to be little or no chance of improvement in conditions for the children. The record shows that the mother, although she expressed love for her children, was barely able to provide basic care for herself, let alone her children.

The decision of the district court, upholding the magistrate's order terminating parental rights, is affirmed. No costs or attorney fees allowed.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

Upon the record presented to us, I concur in upholding the magistrate's decree. However, I believe more should be said about the application of our termination statutes to parents who suffer mental disorders. My framework for discussion is the public policy expressed in I.C. § 16–2001, that "wherever possible family life should be strengthened and preserved." These words are not merely aspirational. They play an important role in the decision to terminate a parent-child relationship.

A termination decree may not issue unless the magistrate finds that a statutory ground for termination has been proven and that termination would serve the best interests of the child. *Hofmeister v. Bauer*, 110 Idaho 960, 719 P.2d 1220 (Ct. App.1986). The first requirement, establishing a statutory ground for termination, usually presents an issue of parental fitness. Until it is shown by clear and convincing evidence that a natural parent is unfit, his or her constitutionally protected liberty interest in raising a child may not be extinguished involuntarily. *Id. See generally Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).[1] When a statutory ground for termination has been proven, the focus shifts to the

best interests of the child. A child's relationship to the parent—even a parent shown to be unfit—should be severed only if it appears that the child will be comparatively better off without the relationship. *Hofmeister v. Bauer*, 110 Idaho at 962 n. 1 and 964 n. 2, 719 P.2d at 1222 n. 1 and 1224 n. 2. In many cases this requirement is satisfied simply by a showing that the child will become eligible for a long-term placement, to be determined later by the court or by a public agency charged with promoting the child's welfare. But in some situations a court could find that termination would not serve the child's best interests. One such circumstance would be the loss of a unique advantage of the parent-child relationship, such as a substantial future inheritance. Another circumstance would be a realistic prospect of imminent improvement in the conditions that caused the termination petition to be filed in the first place.

The latter circumstance invokes our public policy of strengthening and preserving family life wherever possible. For example, termination would be inappropriate where child neglect is attributable to a parent's temporary physical illness. In such a case the state's proper role, if any, would be to arrange short-term custody and care under the Child Protective Act, I.C. §§ 16–1601 to 1629, until the parent recovered. The parent-child relationship would not be disturbed. Similarly, if a parent suffers from an identifiable mental disorder, a court should not sever the parent-child relationship unless the disorder is unlikely to be alleviated within a reasonable time or the child's future welfare will continue to be substantially at risk. Indeed, our termination statutes explicitly provide that if termination is sought upon the ground of a parent's "mental illness or mental deficiency," the petitioner must show that "there are reasonable grounds to

---

1. Several forms of parental unfitness are enumerated as grounds for termination by I.C. § 16–2005. Subsection (a) relates to abandonment of the child; subsection (b) refers to neglect or abuse of the child; and subsection (d) pertains to mental illness or deficiency of the parent. The remaining subsections set forth termination grounds other than parental unfitness. Subsection (c) deals with a presumptive parent who is shown actually not to be the child's natural parent; subsection (e) refers broadly to the "best interest of the parent and child;" and subsection (f) relates to consensual termination. The precise meaning of subsection (e) and its constitutionality in light of *Santosky* have not yet been addressed by the appellate courts of this state.

believe the condition will continue for a prolonged indeterminate period and will be injurious to the health, morals and well-being of the child." I.C. § 16–2005(d).

The policy of strengthening and preserving family life also applies where a petition seeks termination, not for a mental disorder *per se*, but for abuse, neglect or abandonment caused by the mental disorder. If the disorder is identifiable and can be alleviated within a reasonable time, and if the child's welfare will not continue to be substantially at risk, the parent-child relationship should be preserved. State intervention should be limited to temporary custody and care of the child until the parent's condition improves. Conversely, if a remediable disorder is not identified, if treatment is not successful, or if the child likely will remain at substantial risk despite treatment, termination is proper.[2]

Thus, where grounds for termination are attributable to a parent's physical or mental ailment, a court should determine whether reasonable efforts have been undertaken to restore the parent's health. In the case of a mental disorder, psychiatric or psychological assistance should be made available if it is obviously warranted. *See In the Matter of the L. Children,* 131 Misc.2d 81, 499 N.Y.S.2d 587 (N.Y.Fam.Ct. 1986) (a case, like the one before us, involving a mildly retarded mother). The New York Court of Appeals has recognized that state agencies are responsible for seeing that family preservation is truly attempted before termination is sought:

> [T]o enable a child to return to his or her family, an agency must have the capability to diagnose the problems of the parent and of the child; access to a host of concrete supportive and rehabilitative services; cooperation with community treatment programs (such as health, alcohol, and drug treatment); and a casework staff that can motivate the parents to avail themselves of services.... Low-

er courts have recognized that an agency is in a superior position to the parent with respect to the planning factor. The parties are by no means dealing on an equal basis. The parent is by definition saddled with problems: economic, physical, sociological, psychiatric, or any combination thereof. The agency, in contrast, is vested with expertise, experience, capital, manpower and prestige. Agency efforts correlative to their superiority [are] obligatory.... The corollary to the agency's dominant position is that indifference by the agency may greatly serve to impede a parent's attempts at reunification.... Of course, transcending the practical reasons for providing a threshold requirement that an agency exercise diligent efforts toward reuniting parent and child is the strong public policy that before the State may terminate parents' rights it must first attempt to strengthen familial ties.... Retention of the diligent effort requirement reflect[s] a sound societal value in addition to considerations of fundamental equity, if not constitutional rights, that the State should exercise reasonable efforts to restore familial relationships before seeking to terminate them.

*Matter of Sheila G.,* 61 N.Y.2d 368, 474 N.Y.S.2d 421, 434–36, 462 N.E.2d 1139, 1152–54 (1984).

The requirement that reasonable efforts be directed toward alleviating a parent's mental disorder does not mean the state must provide long-term psychiatric or psychological services in all termination cases. Not every instance of bad parenting is attributable to a mental disorder. The reasonable efforts requirement is triggered only if a disorder is identified; the disorder is remediable within a reasonable time; and it appears that the child will not continue to be at substantial risk during or after treatment. If these criteria are satisfied, the court should order appropriate treatment

---

**2.** Termination may have an adverse impact on the parent's mental health. However, termination decisions do not turn on the best interests of the parent unless termination is sought under I.C. § 16–2005(e). *Hofmeister v. Bauer, supra.* Where termination is sought on any other statutory ground, the child's best interests

are controlling. The policy of strengthening and preserving family life is anchored in the assumption that children's best interests are served by their natural parents. This policy does not protect parents from the unhappy consequences of termination where the children's needs are not, in fact, being met.

while the child's interim needs are met under the Child Protective Act. If the treatment proves unavailing, the policy of strengthening and preserving family life has been satisfied by the reasonable efforts made. Termination then may be ordered in the best interests of the child.

In this case, the mother raised the reasonable efforts issue in the magistrate division and again in the district court. She asserted that her parenting deficiencies were due to relations with destructive and abusive men. She claimed that the Idaho Department of Health and Welfare should have provided intensive psychotherapeutic treatment to help her deal with low self-esteem and related emotional problems. The Department's social workers, who testified at the hearing on the termination petition, acknowledged that the mother's parenting inadequacies were causally related to her inability to avoid harmful men. The social workers professed no expertise in dealing with this underlying problem. No psychotherapy was provided.

However, the record further indicates that the mother received a psychological evaluation while the Department was providing family services under the Child Protective Act. The mother's attorney did not call the psychologist to testify at the termination hearing. Neither did counsel move the court to order an updated evaluation. On appeal, it has not been argued that the evaluation disclosed any particular mental disorder other than mild retardation. Consequently, the record contains no basis to find that the mother suffers from an identifiable and remediable mental condition. It also is devoid of any basis to find that the children in question would be free from substantial continuing risk even if psychological or psychiatric services were furnished. Accordingly, I conclude that the factual predicate for triggering a reasonable efforts requirement has not been established in this case. For that reason I concur in today's decision upholding the decree of termination.