818 P.2d 310

**In the Matter of Jimmy Joe ARAGON, Christina Ballard and Sherry Poppe.**

**Norma Aragon TANNER, Appellant,**

**and**

**Merlin Poppe, Appellant–
Appellant on Appeal,**

**v.**

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Respondent–Respondent on Appeal.**

No. 18847.

Supreme Court of Idaho,
Boise, May 1991 Term.

Sept. 19, 1991.

Dennis S. Voorhees, Twin Falls, for appellant.

Larry J. EchoHawk, Atty. Gen., James Thomas Baird, Deputy Atty. Gen., Boise, for respondent-respondent on appeal. James Thomas Baird argued.

BOYLE, Justice.

In this appeal from a magistrate's order terminating the parental rights of Merlin Poppe with respect to his two minor children, we are called upon to determine whether the findings and order are supported by clear and convincing evidence. We affirm.

I.

Merlin Poppe and Norma Aragon had two children. Sherry was born at Oceanside, California on October 26, 1979, and Jimmie Joe was born at Twin Falls, Idaho, on April 5, 1984. After Jimmie Joe's birth, the children lived with their mother in Idaho and Poppe continued to reside in California. Poppe visited Aragon and the children periodically and eventually moved to Idaho in 1985.

From a time shortly after Sherry's birth, the Department of Health and Welfare maintained contact with Aragon to aid in her development as a parent. Legal custody of the children had been placed on occasion in the Department and the children had spent time in foster homes. In 1986, legal custody of Sherry and Jimmie was again placed in the Department of Health and Welfare pursuant to the Child Protective Act after it was found that one of Aragon's other children[1] was not developing properly. Although legal custody was placed in the Department, Aragon retained actual physical custody of the children. In July, 1987, the children were taken from the home and once again placed in foster homes.

After legal custody was placed with the Department in 1986, family assessment meetings were conducted by Department case workers and parenting contracts were signed by both Aragon and Poppe which outlined the changes needed to be undertaken by the parents. The Department then sought to obtain the parents' commitment to make the necessary changes and subsequently evaluate their resolve and ability to make their lives more suitable for parental responsibilities. Pursuant to a Department request, Poppe attended an anger management class but the record indicates that Poppe failed to attend parenting classes, to provide a schedule of financial contribution and a plan of support for his children as requested by the Department case worker. Poppe's wages were subse-

---

1. Aragon had another minor child, Christiana Ballard, who is not Poppe's child, and accord-
ingly is not involved in this appeal.

quently garnished by the Department because of lack of voluntary child support provided to the children.

The record indicates that Department case workers found it difficult to locate and work with Poppe because he provided no permanent address. Although he lived with an uncle for a short period of time after his move to Idaho, he lived for more than a year in his van that was parked behind his place of employment in Twin Falls. After Poppe failed to follow through with the parenting contract, he was denied a subsequent contract with the Department.

On November 3, 1987, a petition was filed by the Department to terminate the parental rights of both Norma and Poppe. After extensive testimony, the magistrate court terminated the parental rights of both parents.[2] The magistrate's order was affirmed on appeal to the district court and the case was appealed to this Court.

## II.

■ Poppe asserts there was insufficient evidence to support the magistrate's determination and order terminating his parental rights. In proceedings to terminate a parent-child relationship, grounds for termination must be shown by clear and convincing evidence as mandated by the due process clause of the Fourteenth Amendment. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). This is also a well established evidentiary requirement in Idaho. I.C. § 16–2009; *In Interest of Bush*, 113 Idaho 873, 749 P.2d 492 (1988); *In Interest of Dayley*, 112 Idaho 522, 733 P.2d 743 (1987); *Crum v. State, Dep't of Health & Welfare*, 111 Idaho 407, 725 P.2d 112 (1986); *see also Hofmeister v. Bauer*, 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986); *In Interest of Cheatwood*, 108 Idaho 218, 697 P.2d 1232 (Ct. App.1985).

■ Our review of factual findings is limited, and where the trial court has

granted a petition terminating parental rights, that conclusion will not be disturbed on appeal so long as there is substantial competent evidence in the record to support the findings. *In Interest of Bush*, 113 Idaho 873, 749 P.2d 492 (1988); *In Interest of Dayley*, 112 Idaho 522, 733 P.2d 743 (1987); *Rhodes v. State, Dep't of Health & Welfare*, 107 Idaho 1120, 695 P.2d 1259 (1985); *In Interest of Castro*, 102 Idaho 218, 628 P.2d 1052 (1981). Furthermore, "in reviewing such findings, this Court will indulge all reasonable inferences in support of the trial court's judgment" when reviewing an order that parental rights be terminated. *Castro*, 102 Idaho at 221, 628 P.2d at 1055.

Poppe urges we adopt a stricter standard of review when reviewing parental termination proceedings. We rejected this argument in *Interest of Bush*, 113 Idaho 873, 749 P.2d 492 (1988), citing and relying upon the Court of Appeals' holding in *Thompson v. Thompson*, 110 Idaho 93, 714 P.2d 62 (Ct.App.1986). In *Bush* we adhered to the "clearly erroneous" standard of review in parent-child termination cases. 113 Idaho at 876, 749 P.2d at 495. Accordingly, we adhere to well established precedent and decline to adopt a stricter standard of review. *Id.*

We recognize that substantial fundamental liberty interests involved in parental termination proceedings are protected by the Fourteenth Amendment, and agree with the Court of Appeals here, as we did in *Bush*, that

[t]he finder of fact has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties. In a parental-termination case, this is immensely important. A cold record of the trial does not tell the whole story. An independent review by our court could not take into account the trial court's superior view of the entire situation.

**2.** Norma Aragon's parental rights were terminated for neglect pursuant to I.C. § 16–2005(b)

and she has not appealed.

110 Idaho at 96, 714 P.2d at 65. We note under I.C. § 16–2009, that sufficient procedural safeguards exist to ensure the rights of parents. Idaho Code § 16–2009, unlike the deficient New York statutory standard in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), requires a "clear and convincing" evidentiary standard. In addition to the requirement that the grounds for termination be supported by clear and convincing evidence, a parent is entitled to have counsel present at the hearing, and as was the case with Poppe, if they cannot afford an attorney, counsel is provided.

Idaho Code § 16–2005 sets forth the criteria for terminating parental rights. The statute provides in pertinent part:

**16–2005. Conditions under which termination may be granted.**—The court may grant an order terminating the relationship where it finds one or more of the following conditions exist:

a. The parent has abandoned the child by having failed to maintain a normal parental relationship, including but not limited to reasonable support or regular personal contact; failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section.

b. The parent has *neglected or abused*[3] the child. *Neglect as used herein shall mean a situation in which the child lacks parental care necessary for his health, morals and well being.*

c. The presumptive parent is not the natural parent of the child.

d. The parent is unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe the condition will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.

e. If termination is found to be in the best interest of the parent and child, where the petition has been filed by a parent or through an authorized agency, or interested party. (Emphasis added.)

Extensive evidence was produced at the hearing and the magistrate, as part of his memorandum decision, stated:

[Poppe] has been in and out of the home on a very limited sporadic basis. Although he saw Jimmie Joe every other day in 1986 and 1987, the testimony shows there is no positive bonding of either child to him. In fact both children have made it known they fear him and don't want anything to do with him. Mr. Poppe has not furnished adequate financial support for the children. When he furnished the support voluntarily he has asked that the money be paid back by Norma [Aragon]. He has not had physical accommodations for the children to visit or live as he was living out of his Van at the back of a restaurant he worked in as a cook. Two to three weeks prior to the termination hearing, Mr. Poppe moved into a trailer with sufficient space for the children but there is not sufficient furniture for the housing of the children.

Norma Aragon testified she tried to limit Mr. Bud Poppe's access to the children because of his physical and mental abuse of the children. Mr. Poppe has made Jimmie Joe scream as a result of physical violence by Mr. Poppe during the juvenile's urinating. Mr. Poppe has bent Sherry's arms up toward her head when her arms were held behind her back. Reminding this court of some POW torture. He consistently called the children derogatory names and belittled them to their detriment. This abuse continued even through the Anger Management Course he completed with the Department of Health and Welfare.

Mr. Poppe has never approached nor insisted upon visitation with his children while they have been with the Department of Health and Welfare since July,

---

**3.** Idaho Code § 16–2002(e) provides: "Abuse" used with respect to a child refers to those situations in which physical cruelty in excess of that required for reasonable disciplinary purposes has been inflicted by a parent or other person in whom legal custody of the child has been vested.

1987. Mr. Poppe knew of the neglectful and emotionally-scarring lifestyle Norma gave to her children, but he never worked in any capacity with Norma or the Department to improve their situation.

Mr. Poppe's plan for the children is totally unrealistic. He would have provided sexually abusive parents as the main baby sitters for these children. His living quarters weren't adequate at trial and were only secured 2–3 weeks prior to trial. Because of his lifestyle choices and friends, as well as his non-involvement for years with these children, as well as his minimal financial capabilities and marginal (at best) physical surroundings for the children, he is not a good candidate for placement of the children. Quite frankly, this Court doesn't believe Mr. Poppe about his new found interest in the children. If he truly cared about these children his neglectful and abusive attitude over the years would have been changed and he would have taken steps to protect his children before now.

Because of his physical and emotional abuse of the minor children, Sherry especially wants nothing to do with Mr. Poppe. Also, there was no bonding between Jimmie Joe and Mr. Poppe and an unhealthy bonding between Sherry and Mr. Poppe. To bring him back into this family under the best of conditions would be traumatic to these children. However with Mr. Poppe's inflated and unrealistic goals as well as his lack of parenting skills it would be almost impossible to bring this family together under his guidance.

Meri Brennan testified long term foster care is not effective because of the negative impact on a child's perception of a normal family. The grief of not having a "family" as well as the grief of being moved time to time. This is supported by Mr. De Lienne's opinion as to the adverse effects of long term foster care. Norma Aragon's and Bud Poppe's children have been monitored, supported and protected by Idaho Department of Health and Welfare since 1980. The parents aren't going to improve based upon their prior history to date. Long term or short term foster care is not in the children's best interest. Meri Brennan testified adoption is realistic for these three children as a group. Because they have a positive bonding among themselves it would be in their best interests to be adopted as a group if possible.

Tr., pp. 46–49.

In addition to the observations contained in the memorandum decision, the magistrate also made formal findings of fact and conclusions of law in support of his order terminating the parent-child relationship based upon the best interests and welfare of the children. With respect to Poppe, the following findings of fact provide insight into the magistrate's reasons for terminating Poppe's parental rights.

This Court finds Mr. Merlyn Roscoe "Bud" Poppe has neglected and abused his minor children, Sherry and Jimmie Joe, because:

1. Neglected his children by leaving them in the custody of Norma and not taking any positive step to alleviate their neglectful surroundings throughout their lifetime.

2. Failed to give any guidance or nurturing to Jimmie Joe and as a result no bonding between the two has taken place. Any bonding between Sherry and himself is a negative influence on her life.

3. He failed to provide adequate support in a voluntary way. Instead he made "loans" to Norma to support his children and the Department of Health and Welfare had to garnish his wages before he would further support his children.

4. Sherry is afraid of Bud and states she doesn't want to live in his home.

5. He failed to provide an alternate house knowing his children were in a dirty, neglectful house. He instead lived in his van for many years and only 2–3 weeks before the hearing did he find suitable housing. He then failed to tell the Court it was not properly furnished for the children.

6. His lack of insight into parenting is evident when he chose proven child sexual molesters for the day care of the two children. Even when confronted with the truth he wouldn't believe it and minimized the truth.

7. Bud has physically abused both children, Sherry and Jimmie Joe in the past even while he was attending Anger Management Classes. The abuse consisted of hitting both children, and of bending Sherry's arms up when they were behind her back. As a result of that abuse both children "flinched" at quick movements by adults when first placed in foster care but that habit has improved during foster care.

8. Bud demonstrated no parenting skills or any realistic plan to bring the children into his singular life.

9. Because of the above neglect and abuse this Court finds termination of parental rights of Merlyn Roscoe "Bud" Poppe to Sherry Poppe and Jimmie Joe Aragon should be terminated (sic) and the children placed for adoption.

Tr., pp. 55–56.

■ The magistrate's memorandum opinion expressly states that a "clear and convincing" evidentiary standard was applied in finding Poppe had neglected and abused his children and that it was in their best interest that his parental rights be terminated. In an action to terminate parental rights, where the clear and convincing standard has been noted explicitly and applied by the trial court, an appellate court will not disturb the trial court's findings unless they are not supported by substantial competent evidence. *In Interest of Bush,* 113 Idaho 873, 749 P.2d 492 (1988); *see also Hofmeister v. Bauer,* 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986).

■ We note that the statutory grounds for termination under I.C. § 16–2005 are independent and if any one or more of the grounds for termination are found, termination may be granted. *Hofmeister v. Bauer,* 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986). This test was noted in *Hofmeister* wherein it was stated that "the best interest of the child must be considered when terminating the relationship under any provision of I.C. § 16–2005." However, the best interest of the parent is not a consideration unless termination is sought under I.C. § 16–2005(e). *Hofmeister v. Bauer,* 110 Idaho 960, 962 n. 1, 719 P.2d 1220, 1222 n. 1 (Ct.App.1986).

■ After hearing the testimony and considering the evidence, the magistrate court determined Poppe had neglected and abused his children and that it was in the best interest of the children that his parental rights be terminated. We have extensively reviewed the record in light of the fundamental liberty interests involved and hold there is substantial and competent evidence to support the magistrate's findings and conclusion of neglect and abuse as those terms are defined by statute. While Poppe admits abusive behavior occurred, he argues the extent of such behavior does not warrant termination of his parental rights. As noted above, however, once a statutory ground for termination is found, the magistrate must determine what is in the best interest of the child. *Rhodes v. State, Dep't of Health & Welfare,* 107 Idaho 1120, 695 P.2d 1259 (1985); *Hofmeister v. Bauer,* 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986). Where abuse or other grounds for termination are minimal, the best interests of the child test would sufficiently weigh the need for termination of parental rights with the statutory preference for preserving and strengthening family life.[4]

---

**4.** The legislative purpose for providing for termination of the parent and child relationship is set forth in I.C. § 16–2001 which provides:

The purpose of this act is to provide for voluntary and involuntary severance of the parent and child relationship and for substitution of parental care and supervision by judicial process, thereby safeguarding the rights and interests of all parties concerned and promoting their welfare and that of the state of Idaho. Implicit in this act is the philosophy that wherever possible family life should be strengthened and preserved and that the issue of severing the parent and child relationship is of such vital importance as to require a judicial determination in place of attempts at severance by contractual arrangements, ex-

### III.

After carefully studying the record we conclude that substantial and competent evidence exists to support the magistrate's conclusion that Poppe neglected and abused his children. Given the history of abuse and neglect contained in the record, we hold that it was not clearly erroneous for the magistrate court to find that it was in the best interest of the children that Poppe's parental rights be terminated to allow the children to be placed into a home for adoption and be provided with the opportunity to secure the benefits of permanent family relationships. On the record before us we find no error in the proceedings before the trial court.

Poppe raises additional issues on appeal that we have reviewed and deem to be without merit. The decision of the magistrate court is affirmed. Costs to respondent.

BAKES, C.J., and McDEVITT, J., concur.

BISTLINE, Justice, specially concurring.

The Court notes that Poppe "raises additional issues on appeal," but then summarily dismisses them as "without merit." Such a disposition is inappropriate in cases which affect what has been called by one court "the natural and sacred right of a parent to the custody of his or her child." *In re Hudson,* 13 Wash.2d 673, 126 P.2d 765, 768 (1942). Given the gravity of our decision today, which irrevocably takes his children from his care and custody, this Court should give Poppe the consideration of a discussion of all the issues raised by him.

° The issues not discussed by the majority are as follows:

I. Whether the due process clause of the federal constitution requires that the state in an action seeking to terminate parental rights make a showing either of (a) permanency in the condition complained of, (b) grievous conduct of neglect, or abuse, or (c) reasonable but unsuccessful government efforts to reunite family members.

II. Whether the Adoption Assistance and Child Welfare Act of 1980 requires that a State in an action seeking to terminate parental rights make a showing of reasonable but unsuccessful governmental efforts to reunite family members.

III. Whether the Child Protective or Termination of Parent and Child Relationship Acts of the state of Idaho requires that a state in an action to terminate parental rights make a showing of reasonable but unsuccessful government efforts to reunite family members.

IV. Whether the State has shown by clear and convincing evidence reasonable but unsuccessful government efforts to reunite Merlin Poppe with his minor children.

Appellant's Brief at 9.

### DUE PROCESS AND STATUTORY REQUIREMENTS

Poppe argues that the due process clauses of the Idaho and U.S. Constitutions require that the State must show, by clear and convincing evidence, one of the following before termination may be ordered: 1) that there is a permanent condition presenting an unreasonable risk of harm to the children, 2) there was grievous misconduct with respect to the children, or 3) there has been a reasonable but unsuccessful State effort to reunite the family. He also argues that I.C. § 16–1601 and 42 U.S.C. § 671(a)(15) require the State to make reasonable efforts to reunite the family before termination may be ordered.

The State concedes it is "required, in order to receive federal funds for its program, to implement a plan that insures reasonable efforts to prevent family break-up before children are removed from their parent or guardian's home." Respondent's Brief at 11. But, it goes on to argue, such efforts were made in this case. Given the State's position that it was obligated to make reasonable efforts to reunite Poppe with his children, the Court need not decide the constitutional or statutory questions, but that does not justify its summary con-

press or implied, for the surrender and relin-

quishment of children.

clusion that Poppe's claims are without merit. To the contrary, the State must have thought the claims had some merit since it conceded one of the points.[5]

## SUFFICIENCY OF EVIDENCE

Assuming then, but without deciding, that the State was obligated to make reasonable efforts to reunite Poppe with his children, the Court should answer the question of whether the district court's finding that "all reasonable efforts were taken to make it possible for the children to return to their home, but these efforts were not successful," is supported by sufficient evidence in the record.

Before that question is addressed, however, a comment needs to be made about the majority's discussion of the proper standard of review. In their discussion of the sufficiency of the evidence as to the findings of neglect and abuse, the majority cites to *Interest of Bush*, 113 Idaho 873, 749 P.2d 492 (1988), for the proposition that, in a review of factual findings in parental termination cases, we will not disturb the findings of the trial court "so long as there is substantial evidence in the record to support its findings." 113 Idaho at 876, 749 P.2d at 495. That statement is correct as far as it goes, but it does not go far enough.

We made clear in *Bush* that we apply a *de facto* stricter standard of review in parental termination cases because there is a stricter burden of proof at trial.

> The substantial evidence or clearly erroneous standard of appellate review, however, is not applied identically in all instances: the appellate standard of review parallels the trial court's burden of proof. Obviously, the substantial evidence test requires a greater quantum of evidence in cases where the trial court

finding must be supported by clear and convincing evidence. Thus, in termination proceedings, if there is evidence in the record from which the trial court may properly conclude that the issue has been resolved by *clear and convincing* evidence, the appellate court will not set that resolution aside.

*Bush*, 113 Idaho at 876, 749 P.2d at 495.[6]

Turning to the sufficiency of the evidence regarding the services offered to Poppe, a review of the record shows the trial court's conclusion is supported by the evidence. Poppe was asked to have a drug and alcohol assessment, but failed to do so. He was asked a second time, but again failed to comply. There is no indication in the record Poppe was not able to get an assessment for reasons outside his control. In light of his failure to complete the assessment, it would not be reasonable for the State to be required to offer any further services related to substance abuse. Poppe was offered an anger management program, but the court found Poppe's physical abuse of the children continued even after he completed the program. He was offered parenting classes, which he did not attend.

Given Poppe's refusal to address the possibility that his abusive behavior might stem from substance abuse, his failure to attend parenting classes, and his unsuccessful experience in the anger management classes, the trial court did not err in finding that the State had made reasonable but unsuccessful efforts to reunite Poppe with his children.

In sum, although the ultimate conclusion reached by the majority is sound, the method of reaching it leaves much to be desired. First, we should have accurately set out the *Bush* standard of review. Next, we should have addressed all the issues prop-

---

5. The State may admit too much in regard to its concession that it has an obligation under federal law to make reasonable efforts to reunite the family. *See Interest of Brown,* 112 Idaho 901, 904, 736 P.2d 1355, 1358 (Ct.App.1987) (wherein the Court of Appeals rejects the argument made here that 42 U.S.C. § 671(a)(15) requires the State to make reasonable efforts to reunite the family before termination may be ordered).

6. That being said, there is substantial evidence in the record to support the trial court's finding by clear and convincing evidence that Poppe neglected and abused his children and that termination would be in the best interests of the children.

erly raised by Poppe because of the gravity of the decision we are entrusted to make.

JOHNSON, J. concurs.