IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 46327

| In the Interest of John Doe I, Jane Doe I, | ) | |
|---|---|---|
| and John Doe II, Children Under | ) | |
| Eighteen (18) Years of Age. | ) | |
| IDAHO DEPARTMENT OF HEALTH | ) | |
| AND WELFARE, | ) | **Filed: January 23, 2019** |
| | ) | |
| Plaintiff-Respondent, | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| v. | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| JANE DOE, | ) | **BE CITED AS AUTHORITY** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. A. Lynne Krogh, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Brett Schiller, Fruitland, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Matthew Thompson, Deputy Attorney General, Caldwell, for respondent.

_____

GRATTON, Chief Judge

Jane Doe appeals from the judgment terminating her parental rights to her three minor children. Doe argues that the magistrate erred in terminating her parental rights based on her inability to discharge parental responsibility and erred in finding that termination was in the best interests of the children. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case arose in July 2015 when Jane Doe's (Doe) three minor children were placed in the care of the Idaho Department of Health and Welfare (Department): R.C. born in 2008; K.C., born in 2009; and D.E. born in 2013. Doe was previously married to Father I and the two are the

1

parents of R.C. and K.C. Doe and Father I were divorced in 2011. In 2013, Doe married Father II and together they had one child, D.E. Because Father I was either homeless or in prison, the three minor children lived with Doe and Father II. In 2015, the children were taken into the care of the Department after it was reported that R.C. was coming to school with indications of worsening physical abuse.

Case plans for Doe and Father II were subsequently ordered by the court and, based on multiple failures by both parents, the Department filed for termination of parental rights. After a five-day trial in 2018, the magistrate terminated the parental rights of all three parents. Doe's termination was based upon the finding of Doe's inability to discharge her parental responsibilities for a prolonged indeterminate period and the best interests of the children. Doe timely appeals.

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable

2

inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Here, the magistrate terminated Doe's parental rights based on its finding of her inability to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of her children. *See* I.C. § 16-2005(d).

## A.    Discharge of Parental Responsibilities

Doe argues that the district court erred in finding that her inability to parent was likely to continue for a prolonged period of time. Doe acknowledges that at times she was unable to discharge her parental responsibilities. However, Doe claims that the State did not offer Doe adequate services for her disability to be able to parent and her inability to parent was likely linked to the ongoing abuse that she suffered at the hands of Father II, both of which are no longer obstacles for her. However, the magistrate's finding that Doe has an inability to discharge her parental responsibilities for a prolonged period was based on substantial and competent evidence.

Doe testified that she has been diagnosed with bipolar disorder, paranoid schizophrenia, attention deficit disorder, attention deficit hyperactivity disorder, and post-traumatic stress

disorder. Doe has been provided with substantial assistance, including counseling and medication management, to manage these conditions. Nonetheless, the magistrate found "even with assistance, her ability to parent is substantially impaired." Although Doe has "cycles in which she functions and is able to parent," these cycles are followed by "crises in which she is overwhelmed and her children are subjected to or are at risk of neglect and abuse." These crises are often the result of Doe failing to take her medication, while some "appear to be the result of intentional or unintentional efforts at self-sabotage."

Doe has difficulty managing her own mental health. In addition, Doe's eldest child, R.C., is autistic and has various behavioral problems which Doe has failed to adequately manage. When the children were on an extended home visit with Doe, Doe missed appointments with the social worker, medication management appointments, and therapy appointments for both herself and R.C. Thereafter, Doe began deteriorating. R.C. began misbehaving and was placed in a residential facility for children with behavioral issues. During that time, Father II was no longer residing in the home because a no-contact order had been issued as a result of domestic abuse that he perpetrated against Doe. Although Doe argues that her inability to parent was premised in large part on Father II's abuse toward her, Doe also engaged in abusive behavior. Doe's extended home visit was terminated when police were called to Doe's home because of a domestic disturbance. Upon arrival, police heard Doe yelling profanities and found that she had abusively disciplined R.C. It was reported that Doe grabbed R.C. by the neck, laid on top of him with her full body weight, and screamed at him because she "wanted him to understand what it felt like to have somebody screaming in your face." Consequently, Doe was charged with misdemeanor injury to child. Moreover, Doe allowed Father II in the home in violation of the no-contact order and Doe's social worker testified that the house was completely unkempt and in complete disarray with clothing, dishes, and food "at least ankle deep mostly throughout the whole house."

On appeal, Doe argues that at the time of trial, she had "stabilized on her mental health medications and was divorced from [Father II], [therefore] such inabilities were no longer an obstacle for [Doe]." However, Doe obtained a divorce from Father II on the morning of the fifth and final day of the termination hearing. The Department had been working a case plan with Doe for thirty-two months. In that time, Doe remained married to and involved with Father II, thereby subjecting the children to his volatile behavior. After an episode of abuse by Father II,

4

Doe testified that she moved out of the home and became involved with another man whom she knew had just been released from prison for committing a violent crime. Nonetheless, Doe allowed this individual, who was not an authorized visitor, to have contact with the children when he accompanied her on a visit. Doe has continually made choices without regard for her children's safety. Consequently, R.C. has been the victim of verbal and/or physical abuse in the home, either perpetrated by Doe or by Father II.

Although it is important to note that Doe made improvements to the extent that the case was on the verge of being vacated before Father II committed an act of domestic violence against her, Doe's other instances of regression were caused by her own doing. Over nearly a three-year period, Doe was provided the opportunity to show that she could follow the case plan in order to reunify with her children and she failed to do so. Even after the Department informed Doe that they were going to give her extra time to reunify with the children, Doe missed a court date, spent a day in jail, missed three days of medication, used marijuana, and failed a urinalysis test. Doe's cycles of ups and downs have caused physical harm, impacted behavior development, and subjected her children to chaotic and volatile environments. Doe was unable to consistently demonstrate the protective capacity to watch over and care for her children; thus, the magistrate's determination that Doe has an inability to discharge her parental responsibilities for a prolonged period was based on substantial and competent evidence.

**B.      The Children's Best Interests**

Doe argues that it is not in the children's best interests to terminate her parental rights. The Department argues that substantial and competent evidence supports the magistrate's finding that termination of Doe's parental rights is in the best interests of the children.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interest of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interest, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding

5

that it is in the best interest of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe's children have not received the stability at home that they deserve, but are making improvements while in the Department's care. R.C. has made great improvement at the residential facility. R.C.'s residential case manager testified that he has made substantial progress and although R.C. started out "cussing and yelling and screaming . . . . He has become a--a very nice young man. He's polite. He's caring. He tries really hard to help people." She testified that since R.C. entered the program "compared to now, he's doing phenomenal." The Department's case manager testified that K.C. and D.E. are having no issues with their current placement. In addition, when asked if it was in the best interests of the children to come home, Doe testified "Not right now, no, because there's no room for them . . . . I just got evicted." Further, Doe's counselor and case manager both testified that it would be in the best interests of the children to terminate Doe's parental rights. Although she made progress at times, Doe has chronic mental health issues that impair her ability to parent. Her patterns of decomposition and self-sabotage have caused an unstable and harmful environment for her children. The children deserve to have permanency and stability. For these reasons and the reasons set forth above, termination of Doe's parental rights is in the best interests of the children.

### III.

### CONCLUSION

There is substantial and competent evidence to support the magistrate's findings that Doe is unable to discharge her parental responsibilities. Additionally, it is in the best interests of the children to terminate Doe's parental rights. Therefore, the judgment terminating Doe's parental rights is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.