# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48652

| | |
|---|---|
| In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) **Filed: May 25, 2021** |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE | ) **Melanie Gagnepain, Clerk** ) |
| Petitioner-Respondent, | ) **THIS IS AN UNPUBLISHED** ) **OPINION AND SHALL NOT** ) **BE CITED AS AUTHORITY** |
| v. | ) ) |
| JOHN DOE (2021-07), | ) ) |
| Respondent-Appellant. | ) ) |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Thomas D. Kershaw, Jr., Magistrate.

Judgment terminating parental rights, affirmed.

Jacob S. Beck of Rands Law, PLLC, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

_____

LORELLO, Judge

John Doe (2021-07) appeals from the judgment terminating his parental rights. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the father of the minor child in this action who was born in August 2019. Since birth, the child has suffered from a medical condition that can lead to life-threatening drops in blood sugar. Managing this condition requires careful regulation of the child's nutrition. Doe suffers from cognitive and physical impairments and anger-management issues, all of which

1

negatively affect his ability to meet the child's needs. Within weeks of the child's birth, the Idaho Department of Health and Welfare became involved in the child's care plans after a hospital social worker reported that the child was not receiving appropriate care. Despite implementation of two safety plans, the child was removed from the care of Doe and the child's mother due to continued concerns over their ability to parent. The magistrate court placed the child into the Department's custody, approved case plans for both Doe and the child's mother, and conducted several review hearings. Doe failed to make significant progress on his case plan during the underlying child protection action. Ultimately, the Department filed a petition to terminate Doe's parental rights. Following a trial, the magistrate court terminated Doe's rights after finding clear and convincing evidence that Doe had neglected the child and that termination is in the child's best interests.[1] Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). In a termination proceeding, due process and the substantial evidence test require the trial court's findings be supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006); *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600. The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order terminating parental rights. *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65.

---

[1]      The magistrate court also terminated the parental rights of the child's mother. That decision is not at issue in this appeal.

## ANALYSIS

Doe challenges the sufficiency of the evidence supporting the magistrate court's findings that Doe neglected the child and that termination is in the child's best interests.[2] The Department responds that clear and convincing evidence supports the magistrate court's termination decision. We affirm.

### A.     Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist:  (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Idaho Code Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his

---

[2]     Doe also argues that there is insufficient evidence to find that he abandoned the child under I.C. § 16-2002(5). Although the magistrate court's memorandum opinion and order recites the legal standards relating to both abandonment and neglect, the magistrate court's substantive analysis relates only to neglect. Regardless, because we affirm the magistrate court's finding of neglect, addressing Doe's abandonment arguments is unnecessary even if the magistrate court also relied upon that statutory basis for termination. *See Doe v. Doe*, 159 Idaho 461, 464, 362 P.3d 536, 539 (2015).

or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found, by clear and convincing evidence, that Doe neglected the child, stating that Doe might "be unwilling to provide necessary care and subsistence" to the child or that Doe "may simply be unable." Although the magistrate court did not cite a specific statutory definition under which Doe neglected the child, we interpret the above statements by the magistrate court as a finding that Doe neglected the child under I.C. § 16-1602(31)(a). Although Doe acknowledges the record contains evidence that he demonstrated anger-management issues, struggled to care for the child and failed to complete his case plan, Doe contends that there is not substantial, competent evidence of neglect because the evidence does not show "that the child was in danger of any physical abuse" or would "revert and suffer medically if returned." Doe further contends that his case plan performance was not properly evaluated in light of his cognitive disabilities. We disagree.

Despite the absence of evidence indicating Doe physically abused the child, the record is replete with evidence that Doe has a long-term, anger-management problem that can affect the child. The child's foster mother testified that she is "nervous" around Doe and "kept her distance" from him after witnessing him lose his temper in the child's presence. The child's mother testified that Doe could become "really out of control" and throw things around her and the child. Two Department employees also testified that they were concerned about the possibility of domestic violence by Doe against the mother during the underlying child protection action. The child's mother also testified to an incident in which Doe threatened Department employees by saying he would "plac[e] a bomb in the building." Doe's anger issues were so significant that his case plan required him to complete an anger-management course, which his caseworker testified Doe did not do.

Additionally, and contrary to Doe's contention, there is evidence that returning the child to Doe's care posed a risk to the child. The child's mother testified that, prior to the inception of the

4

underlying child protection action, Doe would not help care for the child--contributing to the mother feeling overwhelmed by her parenting responsibilities. More than one Department employee testified that, during the underlying child protection action, they would be concerned if the child was returned to Doe's care. Furthermore, Doe's caseworker testified that Doe failed to pass a parenting class as required under his case plan and that, about a month before the termination trial, she supervised one of Doe's visits in which he had to be stopped from leaving the child unattended on a changing table and had to be prompted to use a diaper of appropriate size.

Doe also admits that the magistrate court's statement that Doe "had some success but more failures" while working on his case plan is accurate. However, Doe asserts that his case plan performance "should be viewed through a somewhat different lens given [his] learning disabilities." Doe testified that he had suffered two traumatic brain injuries in his youth and has attention-deficit hyperactivity disorder and a nonverbal learning disability. According to Doe, these cognitive impairments affected his ability to understand his case plan. However, Doe also acknowledges that "the Department made efforts to explain things to him at his level" and "[a]t several points during trial, witnesses described efforts that were made to accommodate" his cognitive impairments. For example, the teacher of Doe's parenting class testified that Doe was allowed to have another individual read his class assignments to him and write down his verbal responses. Moreover, despite Doe's claim that he "struggled to understand" portions of his case plan, he has not identified a specific case plan task that he failed to complete because he did not understand it.

In sum, there is ample evidence that Doe neglected the child under I.C. § 16-1602(31)(a). When considering whether a parent has neglected a child as defined under I.C. § 16-1602(31)(a), trial courts may consider the parent's compliance with a case plan. *Idaho Dep't Health & Welfare v. Doe (2011-02)*, 151 Idaho 356, 364, 256 P.3d 764, 772 (2011). Department employees testified that Doe failed to show that he had established long-term, adequate housing or stable employment; engaged in mental health treatment; or completed parenting and anger-management courses as required by his case plan. Furthermore, Doe's caseworker testified that Doe had not provided any support, maintenance, or gifts to the child and attended only one of the child's medical appointments during the underlying child protection action. Doe's challenge to the magistrate court's neglect finding seeks to have this Court reweigh the evidence. This Court's review,

however, is limited to whether substantial, competent evidence supports the magistrate court's decision. *See, e.g.*, *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65 (noting review is whether substantial and competent evidence supports the termination decision). We hold that the magistrate court's termination is supported by this quantum of evidence. As such, Doe has failed to show that the magistrate court erred in finding neglect under I.C. § 16-1602(31)(a).

## B. Best Interests of the Child

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that it is in the child's best interests to terminate Doe's parental rights, stating:

> [Doe] may be unwilling to provide necessary care and subsistence, or [he] may simply be unable. In either case, the child needs what the child needs and she will not get it from [Doe].
> For this reason, it is in the child's best interest to terminate parental rights and permit adoption. [The child] has bonded with her foster family and her brother[3] and needs to remain there in a safe and stable environment.

Doe interprets the above statement as finding that termination is in the child's best interests because Doe lacked a bond with the child and could not provide a stable home. Doe does not

---

3      This is an apparent reference to the child's maternal half-brother. The foster parents previously adopted the half-brother after termination of the mother's parental rights to him.

argue that there is not sufficient evidence to support a finding that the child has a bond with her foster parents and half-brother. Rather, Doe contends that the magistrate court erred because there is evidence of a bond between him and the child and there was "no testimony as to the condition of his home" at the time of trial.[4] In support of this argument, Doe cites testimony from the child's mother that, in her opinion, the child bonded with her and Doe during visits and would have "fun" with them outside the foster mother's presence. However, the child's foster mother testified that, during the last medical appointment Doe attended, the child clung to her, cried, and was fearful of Doe--suggesting that any bond between Doe and the child had diminished. The testimony of multiple Department employees that, in their opinion, Doe lacked a bond with the child buttresses the foster mother's testimony.

Regarding Doe's living arrangements, Department employees testified that Doe had been evicted from the apartment he and the child's mother were living in at the inception of the child protection action. According to these Department employees, Doe was unwilling to identify his next place of residence--preventing them from evaluating whether it would be suitable for the child. During the termination trial, Doe's mother testified that Doe was unemployed and living with her. Doe contends that there is no evidence that this residence is unfit for a child. However, Doe's case plan required him to establish safe, sanitary, stable, and substance-free housing. Doe's unwillingness to notify the Department of his residence does not mean the magistrate court's determination that termination is in the child's best interests was not supported by substantial evidence.

We hold that there is sufficient evidence to support the magistrate court's conclusion that termination is in the child's best interests. Although Department workers testified to their belief that Doe loves the child, they also testified that Doe lacks a bond with the child. On the other hand, Doe's caseworker testified that the child is bonded with both her foster family and half-brother. Additionally, the foster mother testified that the child has been in her care for all but

---

[4]     Doe also makes a passing suggestion that the magistrate court "could" have abused its discretion by failing to cite specific factual findings to support its conclusion that termination is in the child's best interests. However, Doe failed to cite legal authority in support of this proposition. Consequently, we will not address the issue further. *See Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018).

a few weeks of the child's life and that, while in her care, the child has gained weight and met developmental milestones, despite her medical condition. Doe has failed to show error in the magistrate court's conclusion that termination is in the child's best interests.

## IV.

## CONCLUSION

The magistrate court's findings that Doe neglected the child and that termination is in the child's best interests are supported by substantial and competent evidence. Doe has failed to show error in the magistrate court's decision to terminate his parental rights. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.