IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37466

| | | |
|---|---|---|
| IN THE MATTER OF JANE DOE, JOHN DOE, JOHN DOE I, JANE DOE I, CHILDREN UNDER EIGHTEEN YEARS OF AGE. | ) ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) | 2010 Opinion No. 51 |
| Petitioner-Respondent, | ) ) | Filed: July 27, 2010 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| JOHN DOE II and JANE DOE II, | ) ) | |
| Respondents-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Bryan K. Murray, Magistrate.

Order terminating parental rights, affirmed.

Samuel C. James, Soda Springs, for appellants.

Hon. Lawrence G. Wasden, Attorney General; James P. Price, Deputy Attorney General, Boise, for respondent. James P. Price argued.

_____

MELANSON, Judge

John Doe II and Jane Doe II appeal from the magistrate's order terminating their parental rights to their children. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Jane is the mother of C.G., a female born in December 2000; D.G., a male born in February 2003; N.G., a male born in September 2004; and K.G., a female born in February 2006. John is the biological father of C.G., D.G., and N.G. John is listed as the father of K.G. on her

birth certificate, but he is not her biological father.[1]  The Department of Health and Welfare initiated a child protection action in November 2007, after the Department had received several referrals regarding the children.  Approximately a year previous, a Department worker visiting a neighbor's house observed C.G., who was five years old at the time, wandering the neighborhood unsupervised.  C.G. appeared dirty and was not wearing shoes.  In September 2007, police were contacted concerning an allegation that K.G., who was one year old at the time, had ingested methamphetamine from Jane's purse.

The impetus for the child protection action occurred in October 2007 when police found D.G. and N.G. playing naked and unsupervised in the middle of the road.  When police visited the home, they observed dirty dishes piled in the sink and over the countertops, garbage spilling over the cans, clothes and linen strewn over a filthy floor, a dirty refrigerator containing very little food, and empty cupboards.  K.G. was roaming naked in the house, and Jane explained that it was because they could not afford diapers.  The water had been turned off for failure to pay the bill.  Jane also indicated that they were behind on rent, and John was not helping support the family.  Jane reported that she had quit her job because it was too hard.  Police questioned Jane about K.G.'s alleged methamphetamine ingestion to which Jane responded that she would not allow the Department to perform drug tests on the children because she had nothing to prove.  The police observed damage to Jane's vehicle which Jane explained happened during an altercation with John.  In November 2007, authorities were alerted to C.G.'s poor attendance at her elementary school.

In December 2007, the parties stipulated to a case plan that allowed the children to remain with the Does under protective supervision.  The case plan also provided, among other things, that the Does cooperate with the Department's home visits; not move outside of the jurisdiction without written permission; notify the Department of address changes; maintain a home free of drugs, alcohol, and other criminal activities; ensure that any child of age is attending school; properly supervise the children and provide them with proper medical treatment; submit to urinalysis testing; and complete various individual and family, as well as drug and alcohol assessments.  The case plan also required that Jane obtain a driver's license as

---

[1]  K.G.'s biological father was a party to the termination proceedings below, had his parental rights terminated with respect to K.G, and is the subject of a separate appeal which will not be further addressed herein.

soon as she was legally able and that John maintain employment and financially support the children.

The condition of Jane and John's home improved slightly after the Department became involved. However, the situation remained unstable and, over the course of the next two years, Jane and John moved at least five times. Several of those moves were motivated by eviction for failure to pay rent. At least one such move, when Jane and John moved to Wyoming, was without written permission from the court and the Department. Jane and John also had a rocky relationship which resulted in periodic separation and at least one alleged incident of domestic violence. Jane filed for divorce during this period, but the action was dismissed for inactivity.

Jane and John's compliance with their case plan was inconsistent. The couple completed individual and family assessments and held a meeting with extended family members to discuss temporary placement for the children. However, Jane and John failed to follow through with many of the recommendations to completion, including substance abuse evaluations and treatment, couple's counseling, and a parenting course. They also failed to live free of drugs and alcohol, which was of great concern in the drafting of the case plan. Due to noncompliance with their case plan, the magistrate ordered the children to be placed in the custody of the state during the remainder of the proceedings.

Foster families and guardians who were responsible for the children reported various disciplinary problems as a result of lack of proper supervision. Perhaps most troubling was the highly-sexualized behavior of C.G., who was teaching her elementary school classmates how to pole dance and be sensual. There were also reports that C.G. had been sexually abused and was now subjecting her younger sister K.G. to abuse. Jane disputed the allegations, claiming that they were not possible and that she had never witnessed such behavior. She admitted that an acquaintance had taken sexually-inappropriate photographs of C.G., but denied that she had been abused. Once placed within the care of the state, the children required extensive dental work and surgery to correct years of neglect and lack of proper hygiene. Jane admitted difficulty in getting the children to brush their teeth. N.G. was behind in his vaccinations. Employment for Jane and John was also sporadic, and John failed to adequately provide for the children even when he had work. Neither of them paid child support for the care of their children in the state's custody nor repaid temporary guardians for clothing and other necessities that were provided for the children. They admitted receiving the child support orders, but claimed that they ignored them because

they did not understand them. Several home visits revealed evidence of alcohol consumption in the home, which was also contrary to the requirements of the case plan. Neither parent maintained regular phone contact with the children, despite the allowance of such contact. During visits with the children, both Jane and John displayed poor, and at times unsafe, parenting judgment with the children.

The Department sought termination of Jane and John's parental rights to the children. A hearing was held over several days in October 2009 and January 2010. Numerous witnesses testified as to the instability in Jane and John's lives and their lack of compliance with the case plan. These witnesses were of the opinion that Jane and John could not adequately raise their children. Some witnesses were presented on behalf of the parents. These witnesses testified that Jane and John had made progress and were now capable of raising and nurturing the children in a stable home environment. Jane and John offered assurances that all of their problems were behind them. The magistrate terminated Jane and John's parental rights to C.G., D.G., N.G., and K.G. on the grounds of neglect and abandonment. The magistrate also held that John is the presumptive father of K.G., but has been shown not to be her biological father. Jane and John appeal.

## II.

## STANDARD OF REVIEW

In an action to terminate parental rights, due process requires this Court to determine whether the magistrate's decision was supported by substantial and competent evidence. *State v. Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 345-46, 144 P.3d at 599-600   This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Doe v. Doe*, 148 Idaho 243, 246-47, 220 P.3d 1062, 1064-65 (2009). We conduct an independent review of the record that was before the magistrate. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United

4

States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id.* Idaho Code Section 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the magistrate concluded, among other things, that Jane and John's parental rights to their children should be terminated for neglect. Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(25),[2] as well as situations where the "parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9)." The time standard established by I.C. § 16-1629(9) is defined as when "a child is placed in the custody of the Department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care."

In support of its conclusion that Jane and John had neglected their children, the magistrate held that they had "failed to provide proper parental care and control, or subsistence, medical or other care or control necessary for the well being of the children." The magistrate

---

[2]    Idaho Code Section 16-1602(25) provides, in pertinent part, that a child is "neglected" when the child "is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them."

5

also held that Jane and John were neglecting their children through failure to pay child support and also were neglecting C.G.'s education. The magistrate concluded:

> It is in the best interest of the children that [Jane and John's] parental rights should be terminated. Because of what the children have been through they need capable, dedicated parents who can deal with existing and expected behavior, health and development issues of the children. The children need a permanent stable home as soon as possible. They can wait no longer for the parents to prove themselves. Expecting the parents to do now what they could and would not do in the past demonstrates how unlikely reunification is any time soon. The [Department] is meeting the needs of the children far better than their parents did. The parents have demonstrated an unwillingness to comply with court orders.

Based on the totality of the evidence presented at the trial, we conclude that there was substantial and competent evidence to support the magistrate's decision that termination was proper. The facts of this case, as summarized above, were established by the testimony of numerous witnesses at the three-day termination hearing. These witnesses included law enforcement, social workers from Idaho and Wyoming, CASA representatives, foster parents, and guardians--some of whom were related to Jane and John. All of these witnesses were in agreement as to the unstable and inadequate living conditions and the lack of improvement demonstrated by Jane and John. Additionally, the witnesses were in agreement that Jane and John were either unwilling or unable to provide the extent of care and stability necessary for their children's well-being. Thus, there is substantial and competent evidence supporting the magistrate's decision.

Jane and John disputed some of the facts presented by the Department. They testified that there was never any instance of domestic violence between them. They testified that they were willing to have the children drug tested. They also provided testimony explaining or rationalizing some of the troubling facts of this case, including the incidents of sexual abuse, lack of school attendance, poor dental care, lack of discipline and adequate supervision, lack of contact with the children, as well as failure to provide financial support and to comply with court orders, drug testing, and other requirements of their case plan. Jane, John, and some immediate family members also testified that conditions had improved and would remain stable for the foreseeable future. Thus, there was evidence presented that Jane and John had made some progress. However, Jane and John's progress was not for any significant period of time,

especially in light of their turbulent history and tendency to relapse into destructive patterns of parenting.

This child protection case progressed for over two years. During this time, Jane and John enjoyed periods of progress that were repeatedly followed by desistence and relapse. Rather than promoting stability, this ongoing pattern created even greater uncertainty in the lives of their children. Therefore, there is little credibility to the testimony that all of their uncertainties had been permanently addressed. Jane and John appeared to display genuine love and concern for their children during the termination hearing. However, they had over two years to demonstrate their love by making the necessary reforms in their lives in order to provide proper parental care and control for the children and to abide by the simple strictures of their case plan. They failed to make the necessary changes. Accordingly, the magistrate did not err by holding that termination was in the children's best interests and that Jane and John had neglected them by failing to comply with their case plan and by failing to provide proper parental care and control. Because neglect constitutes a sufficient, independent ground for termination of parental rights, we do not address the magistrate's additional reasons for termination.

Jane and John also contend that the Department did not make reasonable efforts at reunification because it did not provide greater financial assistance for the couple to go to counseling and complete the other requirements of their case plan. Their argument is without merit. There was substantial and competent evidence presented at the termination hearing that the Department made reasonable efforts to reunify the parents with their children. The children were allowed to stay in the custody of Jane and John until their own noncompliance forced the Department to seek a custody order. The Department repeatedly tracked Jane and John down after they moved without notice or permission. The Department then coordinated a cooperative effort with officials in Wyoming after Jane and John relocated the children there. The testimony presented at the termination hearing reveals numerous visits and encouragement to comply with the case plan requirements. Jane and John were allowed frequent visitation with their children and could speak to their children as often as they desired over the phone. However, Jane and John failed to take advantage of those opportunities. The magistrate did not err by finding that the Department had made reasonable reunification efforts.

## IV.

## CONCLUSION

There is substantial and competent evidence to support the magistrate's conclusion that termination was in the children's best interests. There is also substantial and competent evidence to support the magistrate's conclusion that Jane and John had neglected their children for failure to comply with their case plan and provide proper parental care and control. Furthermore, there is substantial and competent evidence to support the magistrate's conclusion that the Department made reasonable efforts to reunite Jane and John with their children. Accordingly, the magistrate's order terminating Jane and John's parental rights to their children, C.G., D.G., N.G., and K.G. is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge LANSING and Judge GRATTON, **CONCUR.**