IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41070

IN THE MATTER OF THE                )
TERMINATION OF THE PARENTAL          )
RIGHTS OF JANE (2013-13) DOE.        )
IDAHO DEPARTMENT OF HEALTH &         )     2013 Unpublished Opinion No. 710
WELFARE,                            )
                                    )     Filed: October 16, 2013
        Petitioner-Respondent,      )
                                    )     Stephen W. Kenyon, Clerk
v.                                  )
                                    )     THIS IS AN UNPUBLISHED
JANE (2013-13) DOE,                 )     OPINION AND SHALL NOT
                                    )     BE CITED AS AUTHORITY
        Respondent-Appellant.       )
                                    )

Appeal from the Magistrate Division of the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. Scott L. Wayman, Magistrate.

Decree terminating parental rights, affirmed.

John M. Adams, Kootenai County Public Defender; Jay Logsdon, Deputy Public Defender, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Denise Rosen, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Jane Doe argues that the magistrate court erred by failing to recognize that it had been divested of jurisdiction, by inadequately considering whether Doe had a disability, and by failing to recognize the Idaho Department of Health and Welfare (Department) offered inadequate support to her as a disabled parent.  Finally, she argues that the magistrate court erred by finding that termination was not in the best interests of her children.  We affirm.

I.

BACKGROUND

In 2010, the three of Doe's children who are discussed in this appeal lived with Doe.  At that time, the youngest child was four years old and the oldest child was fourteen.  Police

1

originally came to Doe's home to resolve a noise complaint on December 19, 2010. Doe's oldest daughter had begun yelling after Doe slapped her. Police found a home in disarray. There was insufficient food in the home and an unsecured butcher knife was found on the floor next to a children's toy. The youngest children had lice and an older child had severe tooth decay.

In addition to observing conditions which the police believed endangered the children, police heard from Doe's children that she was playing video games rather than caring for them. Doe essentially admitted that she had done so. She admitted that she was playing "World of Warcraft" approximately six to eight hours per day in the time leading up to the removal of her children. Her playing was not limited to hours where other adults were available to care for her children or when her children were asleep. It also appears that Doe did not choose to play the game in a manner in which she could take frequent breaks to care for her children. Rather, she chose to play with groups of other players who depended upon her maintaining a sufficient level of attention to the game in order to meet group objectives.

For all of these reasons, officers believed Doe's children were in danger and removed them from the home. The Department thereafter discovered that Doe's children had been removed from her custody on three prior occasions in the state of Washington. From the records, it does not appear that Doe was always the party primarily responsible for the removal. For example, one removal appears to have been based upon physical abuse by the father of one of Doe's children. However, other removals were based upon facts similar to the instant circumstance--Doe's failure to supervise and appropriately parent her children.

On December 22, 2010, the trial court entered a sheltering order and, shortly thereafter, Doe stipulated that her children fell within the jurisdiction of the Child Protection Act. On February 8, 2011, the court ordered the parties to comply with a case plan.

Over a year and one-half later, on September 21, 2012, the Department filed a petition to terminate Doe's parental rights as to three of her children. The petition sought termination on the grounds of abandonment, neglect, and Doe's inability to discharge parental responsibilities pursuant to Idaho Code §§ 16-2002(3), (5), 16-2005(1)(a), (5)(d), as those statutes were then in effect.[1] The termination trial was conducted on March 19 and 20, 2013.

---

[1]     The petition references statutes which were amended effective July 1, 2013. 2013 Idaho Sess. Laws ch. 287, § 10 at 741. Under the prior statutory scheme, Idaho Code § 16-2005 set forth the grounds for termination and certain grounds were defined in I.C. § 16-2002. In

At the termination trial, Doe admitted that she failed to comply with various portions of the case plan. In particular, she admitted that she did not obtain consistent employment, provide evidence of employment, or show she was capable of applying significant parental skills such as instituting consequences for inappropriate behavior.

Doe argued that she had met certain requirements of the case plan because of changes to her lifestyle, all of which occurred in the month immediately preceding the trial. She testified that her living situation had changed substantially. In the year prior to the trial, Doe had lived in four different homes in three cities across the Pacific Northwest. At the trial, she testified that she had arranged for consistent housing because she had signed a one-year lease less than a week before the trial. Likewise, Doe had three jobs in the preceding three years. One job was temporary; Doe quit another job because of scheduling issues; and another job ended because Doe had car trouble. In total, she had worked approximately six months out of the past thirty-nine months.[2] Doe argued she had found consistent employment because, approximately a month before the hearing, she accepted employment with Trafficorp. While Doe had accepted this job, she admitted she had not yet begun work and had no income from it. Moreover, the available hours and rate of pay of this job were not clearly established.

Finally, Doe argued that her failure to meet some of the case plan's requirements was outside of her control. For example, for a time Doe's children were permitted to stay with Doe overnight. However, these visits were stopped because of a dispute between Doe's children and Doe's mother while Doe lived with her mother. The lack of visits in a home setting prevented

---

addition, I.C. § 16-2002 referred to a definition of neglect in I.C. § 16-1602(25) and to a timeline in I.C. § 16-1629(9). The statutory amendment had the following effects: (1) the relevant timeline is now set forth in I.C. § 16-2002 without further reference to another statute, and (2) I.C. § 16-1602(25) was renumbered to I.C. § 16-1602(26) but the text of the statute was not changed. Further effects of the amendment, where relevant, are discussed below. In the remainder of this decision, we will refer to the content and numbering of the statutes as they existed before the amendment.

[2] Doe also enrolled in school during this period and successfully completed two semesters. However, Doe did not complete her third semester and at the time of trial was no longer attending school. Furthermore, Doe did not attempt to amend the case plan to move the focus from employment to education.

Doe from completing some portions of Parenting with Love and Limits, a class wherein Doe was given training in appropriate parenting techniques.

In addition to Doe's testimony, the trial court heard testimony from several experts who were involved in some part of the case plan. For example, Larissa Lotten, a licensed master of social work, opined that Doe was unable to provide a minimally sufficient level of parenting. Additionally, based upon her interactions with the children and Doe over a period exceeding two years, it was her opinion that termination of Doe's parental rights was in the best interests of the children. In her view, the children required stable, healthy homes to care for the children's physical and emotional needs, and Doe would not care for those needs. The testimony of the other experts, where relevant, is discussed below.

The trial court issued a decree terminating Doe's parental rights as to each of the three children. In the court's findings or conclusions supporting the decree, it did not find that Doe had abandoned her children or that Doe was unable to discharge her duties as a parent.[3] However, the trial court did find that Doe neglected her children by failing to comply with the court's orders contained in the case plan and that reunification did not occur within the appropriate timeline. The court said that a trial court is able to overlook some issues of minor noncompliance and determine whether a parent "substantially complied" with the "major areas" of concern set forth in a case plan. Nonetheless, the court found that Doe failed to comply with her case plan. In particular, it found that Doe had failed to maintain a safe and stable home, to maintain consistent employment, to fully complete the required counseling, or to demonstrate appropriate parenting skills. The court also found that Doe neglected her children under the alternative definition in I.C. § 16-1602(25) because she failed to provide safe housing, provide proper medical care, and adequately address her children's mental health needs. In addition to finding that the children were neglected, the court found that it was in the best interests of the

---

[3]     While the trial court did not find that an inability to parent was grounds for termination, Doe's ability to parent was considered. The trial court based its decision regarding the best interests of the children, in part, upon its finding that Doe failed to "demonstrate the ability to set appropriate boundaries for the children or appropriate[ly] discipline or properly supervise them." The court described this failure not as an inability to use the skills, but as an unwillingness to properly parent.

children that Doe's parental rights be terminated. For all of these reasons, the court terminated Doe's parental rights as to each of the three children. Doe appeals.

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that wherever possible family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence." *Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Therefore, on appeal from a decision terminating parental rights pursuant to the CPA, due process requires this Court to determine whether the trial court's decision to terminate is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.*

Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and there is a showing of any one of five factors, including neglect or abuse. In this case, the Department alleged that Doe (1) abandoned the children by "willfully fail[ing] to maintain a normal parental relationship," I.C. §§ 16-2002(5), 16-2005(1)(a); (2) neglected her children by failing to provide "proper parental care and control, or subsistence, medical or other care or control necessary for [the children's] well-being, I.C. §§ 16-1602(25), 16-2002(3)(a), 16-2005(1)(b); (3) neglected her

children by failing to comply with the case plan, I.C. § 16-2002(3)(b), 16-2005(1)(b); and (4) was unable to discharge parental responsibilities, I.C. § 16-2005(1)(d).

## A.    Jurisdictional Challenge

Doe argues that the trial court might have been divested of jurisdiction by I.C. § 16-1617(7).[4]    Idaho Code § 16-1617 requires that prosecutors in each county develop multidisciplinary teams to investigate abuse and neglect cases.  In addition to several other requirements, the statute states that "the teams shall develop a written protocol for investigation of child abuse cases and for interviewing alleged victims of such abuse or neglect, including protocols for investigations involving a family member with a disability."  I.C. § 16-1617(2). Doe argues that the Department failed to produce evidence of these protocols at the hearing. Doe argues that this failure divested the magistrate of jurisdiction under her reading of I.C. § 16-1617(7).

Idaho Code § 16-1617(7) states that "[l]ack of review by a multidisciplinary team of a particular case does not defeat the jurisdiction of the court."  Doe essentially argues that we should apply the statutory construction principle of *expressio unius est exclusio alterius*.  In her view, because the statute explicitly states that a particular failure, a "lack of review," does not result in a divestment of jurisdiction, we should infer that any other failure to comply with the terms of the statute does divest the magistrate court of jurisdiction.  We do not adopt this construction.

---

[4]    Doe raises this claim for the first time on appeal.  Ordinarily, we do not consider claims that were not raised in the trial court. *State v. Rogers*, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004).  However, a challenge to subject matter jurisdiction can be raised at any time. *Id.*; *Idaho State Ins. Fund by & Through Forney v. Turner*, 130 Idaho 190, 191, 938 P.2d 1228, 1229 (1997).  In recent years, we have endeavored to be more precise in our use of the term "jurisdiction," distinguishing between subject matter jurisdiction, personal jurisdiction, and other lack of authority. *See, e.g.*, *State v. Armstrong*, 146 Idaho 372, 375, 195 P.3d 731, 734 (Ct. App. 2008).  At the same time, Idaho and federal courts have acknowledged that the prior habit of using the term "jurisdiction" to broadly cover a variety of interrelated concepts is confusing and unhelpful. *Sebelius v. Auburn Reg'l Med. Ctr.*, ___ U.S. ___, 133 S. Ct. 817, 824 (2013); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006); *Armstrong*, 146 Idaho at 375, 195 P.3d at 734.  Accordingly, where our opinion must determine whether a court has jurisdiction, we ordinarily need to precisely define the sense in which we use that term.  However, in this case, because we find that the statute would not divest any court of either personal jurisdiction or subject matter jurisdiction on any set of facts, we need not decide the precise meaning of the word "jurisdiction" as used in the statute.

6

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history, or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain the intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

We find that the statute is not ambiguous and thus we need not engage in further statutory construction. Idaho Code § 16-1617(7) should be read in concert with I.C. § 16-1617(4). The latter statute does not require that multidisciplinary teams review every case, it requires that the multidisciplinary teams "review a representative selection of cases." The effect of I.C. § 16-1617(7) is not to broadly divest the jurisdiction of the magistrate court where there are some types of noncompliance with the statute. Rather, the purpose and effect of I.C. § 16-1617(7) is quite limited--it prevents a party from complaining that his case did not receive this additional review.[5]

---

[5] While we need not and cannot engage in the statutory construction of an unambiguous statute, we briefly note that Doe's construction leads to absurd results. For example, under her construction, if the team was properly organized and developed, but refused to review her case, the magistrate would still have jurisdiction. Conversely, if the case was otherwise fully and properly reviewed, but a single procedure did not include "independent citizen input" or one member out of many on the team was trained in "risk assessment, dynamics of child abuse and interviewing" techniques but not "investigatory techniques," then the magistrate would be divested of jurisdiction. *See* I.C. § 16-1617(3), (5). Thus, even if we found that the statute was ambiguous, Doe's construction would be disfavored.

**B.      Arguments Based Upon Doe's Alleged Disability**

Doe argues that the trial court erred in finding that she had neglected her children because the Department failed to prove that it had made reasonable efforts to reunite her family in light of her disability. Doe does not assert any other deficiencies in the trial court's decision that she neglected her children. In particular, she does not contest the finding that she failed to comply with the terms of the case plan. Rather, she argues that this failure should be excused or viewed in a different light given her disability.

Doe does not describe her alleged disability with any degree of particularity. Doe states she has a "mental disability" and, at some points implies that this disability is an addiction to the World of Warcraft video game. However, at other points, Doe indicates that she was not diagnosed with an addiction to video games and that she is not addicted to video games either because she never was addicted or has been successfully treated. In other portions of the briefing, Doe argues that she has an unidentified or insufficiently identified psychological issue which limits her ability to parent. We consider the unidentified or insufficiently identified psychological issue to be the primary issue on appeal because it would be absurd to maintain that the trial court insufficiently considered a condition that either never existed or was successfully treated before the hearing.

Doe mentions the Americans with Disabilities Act (ADA) but does not appear to argue any violation of the ADA as a defense to this termination of parental rights action. Nonetheless, Doe argues that her disability is relevant to the trial court's determination of whether the Department made reasonable efforts to reunite her family.[6] Doe argues that the Department

---

[6]      While Doe asserts various novel defenses she argues should apply in Idaho, she overlooks the relevant statutes pertaining to disability and the procedural safeguards they contain. In I.C. § 16-2005(6) the legislature provided additional protections for parents with disabilities: "the parent shall have the right to provide evidence to the court regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child." While the protection in the statute is not an issue on appeal, we find it instructive. This protection focuses on whether the parent has the *ability* to care for a child. *See* I.C. § 16-2002(18), (19). Both "supportive services" and "adaptive equipment" are defined as aids to a person's *ability* to parent. Accordingly, one can infer that the policy advanced by the legislature is that the State should provide aid to parents whose disability limits their ability to parent when that inability can be remedied by specialized support. Doe's case does not fall within that policy. In this case, the trial court found that Doe

8

failed to evaluate her disability in a timely manner, to submit the evaluation as evidence at the hearing, and to provide services that the evaluation recommended. On this basis, Doe argues that the trial court's decision was not based upon substantial evidence because the record was incomplete. Furthermore, Doe argues these failures demonstrate that the Department did not make reasonable efforts to reunite Doe's family, which should act as a defense to both Doe's alleged failure to comply with her case plan and neglect of the children.[7]

It is unclear whether there is any legal basis upon which Doe can challenge a termination of parental rights on the ground that the Department failed to make reasonable efforts to reunite the family. As early as 1987, this Court expressed skepticism regarding an argument that the failure to make "reasonable efforts" was a defense in a termination action. *In re Brown*, 112 Idaho 901, 904, 736 P.2d 1355, 1358 (Ct. App. 1987). In that case, we held that the "reasonable efforts" analysis was a consideration in proceedings under the Child Protection Act, under title 16, chapter 16 of the Idaho Code and some provisions of federal law, but that termination proceedings were distinct. This reasoning was mentioned with approval in *In re Aragon*, 120 Idaho 606, 613 n.5, 818 P.2d 310, 317 n.5 (1991) (Bistline, J. specially concurring), where Justice Bistline argued that the State may have improperly conceded that it was obligated to prove that it had made reasonable efforts.

Since that decision, both this Court and the Idaho Supreme Court have frequently reviewed the issue of "reasonable efforts," but have infrequently discussed the legal basis which permits an appellant to raise the issue. For example, in *In re Doe 2009-19*, 150 Idaho 201, 207-08, 245 P.3d 953, 959-60 (2010), the Idaho Supreme Court cited I.C. § 16-1621(3) when addressing a claim that the Department failed to make reasonable efforts. In *State, Dep't of Health & Welfare v. Doe*, 149 Idaho 409, 414, 234 P.3d 733, 738 (2010), the Court described the argument as an "affirmative defense" and cited I.C. § 16-2002(b)(3) and I.C. § 16-1629(9),

---

was *unwilling* to appropriately parent her children. Doe acknowledges that unwillingness, not inability, was the basis of the trial court's decision.

[7]    Doe also argues that the Department failed to provide a model for proper parenting. This argument is flatly contradicted by the record, which indicates that proper parenting skills were taught and modeled by Janie Arambarri, a clinician who led the family through Parenting with Love and Limits.

which together defined one means of finding neglect.[8] *See also Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 59, 68-69, 232 P.3d 837, 846-47 (Ct. App. 2010) (Gratton, J, specially concurring) (discussing the import of the previous version of I.C. § 16-1629(9)). In a recent case, we reviewed the issue of whether the Department made reasonable efforts without citing any legal basis which would show that the parent can properly raise that issue on appeal. *In re Doe*, 149 Idaho 564, 569, 237 P.3d 661, 666 (Ct. App. 2010).

This case is not the proper context to resolve this issue because the "reasonable efforts" language was removed from I.C. § 16-1629(9) effective July 1, 2013. 2013 Idaho Sess. Laws, ch. 287, § 10 at 756. This case was decided before the amendment went into effect. Thus, any decision we would render would pertain solely to the former statutory scheme, and we could not consider whether the recent statutory changes allow a reasonable effort defense in a termination of parental rights case. Accordingly, we will dispose of this matter by assuming that a failure by the Department to make reasonable efforts at reuniting a family could be grounds for reversal.

While Doe asserts that she was offered minimal support, which leaves an "indelible" impression that "the Department essentially stopped trying to reunite the family," the record clearly shows that the Department offered considerable supportive resources, which Doe rejected. Accordingly, we find that the magistrate's decision that the Department made reasonable efforts to reunite the family is supported by substantial evidence.

Doe's argument that the Department failed to make reasonable efforts is based upon factual contentions that are contradicted by the record. First, in her briefing Doe claims that she was not given a psychological evaluation "until roughly six months into the case plan." The record shows that an evaluation was performed on February 25, 2011, less than three weeks after the court ordered the parties to comply with the case plan. Second, while Doe is correct in arguing that the evaluation itself was not put before the court at the trial, she ignores the fact that a summary of the evaluation was put in evidence by the Department and without objection by Doe. Third, the claim that the trial court was unaware of Doe's diagnosis or recommended treatment is contradicted by the record. The court explicitly considered the summary, quoting from it before rendering its decision:

---

[8] The reasonable efforts language has been removed from I.C. § 16-1629(9) effective July 1, 2013.

10

> That evaluation reported that [Doe] has mixed personality disorder traits including dependent and impulsive personality. Ms. Zampich reported that [Doe] lacks insight and does not have a[n] understanding of her children's need[s] or a clear understanding of changes that will need to occur to start parenting her children in a more mature and nurturing manner.

The next sentence in the summary, which the court did not quote, set forth the suggested treatment but explained that the treatment was not being provided *because Doe refused that treatment*.

Furthermore, it is abundantly clear that the Department did make reasonable efforts to support Doe but that she declined those efforts. In its oral discussion of the case, the trial court found that Doe did not follow the recommendations of Jennifer Romero, a licensed clinical social worker, regarding possible video game addiction or the recommendations set forth in the psychological evaluation. The case plan required that she "meet with a specialist in video game addiction and complete an evaluation to determine service needs" and "complete a psychological evaluation and follow all recommendations." At the termination hearing, Doe stated that she did these two tasks separately, first seeing a treatment provider who specialized in video game addiction and then seeking a psychological evaluation. Romero evaluated Doe and initially treated her for video game addiction. During this initial treatment phase, Romero's treatment went beyond mere counseling for video game issues. Thereafter, when a psychological evaluation was performed by another treatment provider, Romero and Doe reviewed that evaluation in an attempt to offer an even broader range of services. However, Doe told Romero she disagreed with the findings made in the psychological evaluation and refused additional treatment from Romero. Instead, Doe sought counseling from Ami Lincoln, a minister who provides faith-based counseling at the church Doe attends. Lincoln testified that she provided counseling related to video game addiction, feelings of abandonment, trauma from domestic violence, and parenting skills. At the time of the hearing, Doe continued to receive counseling services from Lincoln. Neither Doe nor Lincoln testified that this counseling was consistent with the recommendations of the psychological evaluation.

The record demonstrates that the Department's efforts to provide treatment options to Doe were substantial and constitute reasonable efforts. The Department began by attempting to treat the most obvious issue, Doe's repeated choice to play World of Warcraft rather than parent. Thereafter, the Department had a more complete evaluation performed and offered additional

11

treatment. Doe unilaterally decided to disregard the opinions and findings in the psychological evaluation, to reject its recommendations, and to seek other forms of counseling. Now, on appeal, Doe argues that these findings were critical to her case, that the recommendations contained therein should have been strictly complied with, and that the treatment inconsistent with this evaluation is necessarily insufficient. There is substantial and competent evidence that Doe was offered specific, tailored support by the Department and that she rejected that support. Accordingly, we do not find any error in the trial court's finding that the Department made reasonable efforts to reunite Doe's family.

## C.     Best Interests of the Children

Aside from the disability arguments that we have already addressed, Doe provides only a single argument that the termination was not in the best interests of the children:  she loves her children and they love her. The court accepted Doe's contention that she loved her children. However, the trial court correctly held that "a child may not live on parental affection alone." *Doe*, 143 Idaho at 389, 146 P.3d at 655. The trial court found that Doe was unwilling to appropriately parent.  It also acknowledged that Doe had, very short in time before the hearing, made some efforts to demonstrate her ability to care for her children. But while these efforts may be commended, they did not show that Doe was likely to provide a stable home. The children had been removed from Doe's home repeatedly in the past and for a long duration on this occasion. These repeated removals caused trauma that Doe was not likely to appropriately remediate. Finally, the court noted that the children were doing better outside of Doe's home and when separated from Doe. These findings are supported by substantial and competent evidence.

### III.

### CONCLUSION

For the reasons set forth above, we find no merit in Doe's claim that the trial court lacked jurisdiction, that the trial court failed to adequately consider Doe's alleged disability, and that the trial court erred in finding that termination of Doe's parental rights was in the best interests of the children. Accordingly, we affirm the decree terminating Doe's parental rights.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**